UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| RICKEY WAYNE NELSON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No. 5:18-cv-00618-AKK |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

Rickey Wayne Nelson seeks judicial review of a final adverse decision of the Commissioner of the Social Security Administration ("SSA"). The magistrate judge entered a report recommending that the court affirm the SSA's decision denying benefits. Doc. 22. Nelson timely filed objections to the magistrate judge's report and recommendation, doc. 23, and the SSA has responded, doc. 25. For the reasons explained below, the court finds that substantial evidence does not support the Administrative Law Judge's ("ALJ's") implicit conclusion that Nelson is not illiterate, and the court rejects the magistrate judge's finding that assessing Nelson as illiterate would not impact the ALJ's ultimate finding that Nelson is not disabled. As a result, the court finds that this case is due to be reversed and remanded back to the ALJ for further proceedings to determine if Nelson is illiterate.

## I.     STANDARD OF REIVEW

A district court "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge."   28 U.S.C. § 636(b)(1)(C). When a party objects to a report and recommendation, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made."   *Id.*

Additionally, federal district courts review the SSA's findings of fact under the "substantial evidence" standard of review.   42 U.S.C. §§ 405(g), 1383(c); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).   The court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).   Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Id.* (internal citations omitted).

## II.     ANALYSIS

Nelson contends that the magistrate judge erred by finding that the ALJ properly relied upon testimony from a vocational expert ("VE") in lieu of applying

the Medical-Vocational Guidelines, commonly called the grids. Doc. 23.[1] According to Nelson, the ALJ should have applied the grids, which would have directed a finding of disability. *Id.* at 8. Specifically, Nelson contends that the ALJ should have found that he is illiterate and, therefore, disabled based on Medical-Vocational Guideline, or Rule, 201.17. *Id.* at 5-8.

### A. Whether the ALJ properly applied the grids

As the magistrate judge discussed, after an ALJ determines a claimant's residual functional capacity ("RFC"), the ALJ must determine whether the claimant can return to his past relevant work. *See* doc. 22 at 2-4. If he cannot, the ALJ proceeds to the fifth and final step of the disability inquiry, where the burden shifts to the SSA "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quotation omitted). The SSA can meet its burden at step five through the use of the grids, or, when the grids are not definitive, through the testimony of a VE. The grids provide detailed tables containing rules, which, "based on a claimant's [RFC], age, education, and previous work experience, direct a finding of disabled or not disabled." *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987). The disability decisions directed by the rules

---

[1] Nelson did not object to the remaining portions of the Magistrate Judge's report. *See* doc. 23.

reflect the SSA's determination regarding whether a significant number of jobs exist in the national economy that a claimant can perform considering the claimant's RFC level (i.e., sedentary, light, medium, heavy, and very heavy), age, education, and work experience. *See* 20 C.F.R. Part 404, Subpart P, App'x 2 § 200.00(b). But, "[t]he grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation." *Walker*, 826 F.2d at 1003 (citing *Smith v. Bowen*, 792 F.3d 1547, 1554 (11th Cir. 1986)).

Here, the ALJ found that Nelson has an RFC limiting him to, at most, sedentary work with additional non-exertional limitations, including that Nelson "can understand, remember, and apply one to two step directions; can maintain concentration, persistence, and pace for one to two step tasks for two-hour periods over the course of an eight-hour workday[] with customary breaks; can have infrequent interaction with the general public, and occasional interaction with co-workers; can adapt to gradual and infrequent workplace changes; and may require direct and tactful supervision." Doc. 8-3 at 26. Based on this RFC, Nelson asserts that the ALJ should have found him to be disabled under Grid Rule 201.17. Doc. 23 at 5. That rule directs a finding of disability for a younger claimant (i.e., one who is 45-49) whose RFC limits him to sedentary work, who is illiterate or unable to communicate in English, and whose prior work experience was unskilled. 20 C.F.R. part 404, subpt. 2, app'x 2 § 201.17. Thus, based on Nelson's RFC, age,

prior work experience,[2] and the magistrate judge's determination that Nelson "may have been illiterate," the magistrate judge correctly noted that the "grids ostensibly would direct a finding of disability" based on Rule 201.17. Doc. 22 at 11.

Nevertheless, the magistrate judge determined that the ALJ did not err by relying on the testimony of a VE to find that Nelson is not disabled because "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." Doc. 22 at 12 (quoting *Phillips v. Barnhart*, 357 F.3d 1232 at 1242 (11th Cir. 2004) (emphasis in original)). But, *Phillips* is distinguishable because the ALJ in *Phillips* relied exclusively on the grids to determine that the claimant was not disabled. *See Phillips*, 357 at 1239-40. The Eleventh Circuit held that before relying exclusively on the grids in that situation, the ALJ must first determine whether the claimant's non-exertional limitation significantly limits her basic work skills, thereby preventing the claimant from performing a wide range of work at a given exertional level. *Id.* at 1243-44. If the non-exertional limitation significantly limits the

---

[2] Nelson has prior work experience involving semi-skilled work as a tack welder, fabricating welding assembler, and furniture assembler. Doc.8-3 at 30. But, as the magistrate judge aptly noted, "Dr. Robert Estock opined Nelson would be limited to unskilled work due to his impairments," and "SSR 82-41 provides that if the claimant cannot use his work skills in skilled or semi-skilled work, the Commissioner considers the claimant's work background the same as unskilled." Doc. 22, n.6.

claimant's basic work skills, then the ALJ must consult a VE to determine whether a significant number of jobs exist in the national economy that the claimant can perform. *Id. See also Wolfe v. Chater*, 86 F.3d 1072, 1078-79 (11th Cir. 1996) (citing *Welch v. Bowen*, 854 F.2d 436, 439-40 (11th Cir. 1988)).

On the other hand, as the ALJ noted in this case, SSA Rule 83-14 provides that when the grids direct a conclusion of disabled based on a claimant's exertional limitation, age, education, and work experience, "there is no need to consider the additional effects of a non-exertional impairment since consideration of it would add nothing to the fact of disability." SSR 83-14. *See* doc. 8-3 at 30. This is logical. A finding of disability directed by the grids reflects the SSA's determination that a significant number of jobs do not exist in the national economy that the claimant could perform based on her exertional limitations, age, education, and prior work experience. *See* 20 C.F.R. Part 404, Subpart P, App'x 2 § 200.00(b). And, the claimant's non-exertional limitations would only further limit the number of jobs that she could perform, meaning there would still not be a significant number of jobs in the national economy that the claimant could perform if the ALJ considered those limitations. In other words, if the grids direct a finding that the claimant is disabled based on her exertional limitations, age, education, and prior work experience, the claimant would still be disabled if she also suffers from non-exertional limitations. *Welchance v. Bowen*, 731 F. Supp. 806, 810 (M.D. Tenn. 1989). Consequently, if

Rule 201.17 applies in this case, then the ALJ should have found that Nelson is disabled, and the ALJ would have erred by relying on VE testimony to find otherwise.

The ALJ did not apply Rule 201.17, however, but instead applied Rule 201.19. Doc. 8-3 at 30. Rule 201.19 directs a finding of not disabled for an individual Nelson's age (i.e., 45-49), who is limited to sedentary work, who has a limited education or less, and who has skilled or semi-skilled prior work experience without transferrable skills. 20 C.F.R. Part 404, Subpart P, App'x 2 § 201.19. If Rule 201.19 applies, then, in light of Nelson's non-exertional limitations, the ALJ could not rely exclusively on the Rule to conclude that Nelson is not disabled. Instead, the ALJ must consult a VE to determine whether jobs exist in the national economy that Nelson could perform. *Phillips*, 357 F.3d at 1242; *Wolfe*, 86 F.3d at 1078-79.

Whether the ALJ should have applied Rule 201.17 or Rule 201.19, and thus, whether the ALJ properly relied on VE testimony to find that Nelson is not disabled, hinges on Nelson's literacy. And, a finding that Nelson is illiterate may well "alter the ALJ's conclusion as to whether [Nelson] was disabled pursuant to the . . . 'grids.'" Doc. 22 at 11. Therefore, the court turns to whether substantial evidence supports the ALJ's finding that Nelson is not illiterate.

**B.** <u>**Whether substantial evidence supports the ALJ's finding that Nelson is not illiterate**</u>

The SSA "consider[s] someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 404.1564(b)(1). Although the SSA regulations note that "[g]enerally, an illiterate person has had little or no formal schooling," *id.*, the amount of schooling is not necessarily determinative, *see Wolfe*, 86 F.3d at 1076-77 (quoting *Glenn v. Sec'y of Health and Human Servs.*, 814 F.2d 387, 390 (7th Cir. 1987)). *See also* 20 C.F.R. 404.1564(b). And, the SSA's "regulation provides for use of numerical grade level to determine [a claimant's] educational abilities only if there is no other evidence to contradict it." *Wolfe*, 86 F.3d at 1077 (quotation omitted).

By applying Rule 201.19 instead of Rule 201.17, the ALJ implicitly found that Nelson is not illiterate, but the ALJ did not make an explicit finding on the issue. *See* doc. 8-3 at 30. As the magistrate judge found, however, the record in this case reflects that Nelson may have been illiterate at the time of the ALJ's decision. Doc. 22 at 11. Indeed, Nelson testified that he is not able to read or write well, cannot read newspaper headlines, and that he had to take an oral exam in order to obtain his driver's license. Doc. 8-3 at 42-44, 52. Nelson also testified that his limited reading and writing skills prevent him from doing office work. *Id.* In addition,

an SSA disability report based on a face-to-face interview with Nelson notes that he "could not/would not read, and had a difficult time understanding most questions . . . , [and Nelson] stated he could write his name but not much else." Doc. 8-7 at 20. When asked during the interview if he could read and understand English, or write more than his name in English, Nelson responded in the negative, and Nelson identified his "learning difficulty" as a condition limiting his ability to work. *Id.* at 22. Finally, Nelson's testimony is supported by his wife, who completed the written function report for Nelson, and who reported that Nelson cannot handle a savings account or use a checkbook because he cannot read or write. *Id.* at 44, 48, 50.

All of this evidence suggests that Nelson may be illiterate. And, although Nelson completed the tenth grade, which supports the ALJ's finding that Nelson achieved a limited education, Nelson attended special education classes in English from the third through the tenth grade. Docs. 8-3 at 52; 8-7 at 24. Moreover, Nelson's years of formal schooling are not dispositive when the records contains contrary evidence indicating that he may, in fact, be illiterate. *See Wolfe*, 86 F.3d at 1077. Critically, however, the ALJ did not analyze this evidence, or explain why he rejected the evidence that Nelson cannot read, before finding that Nelson is not illiterate such that Rule 201.19 applies in this case. *See* doc. 8-3 at 21-31. Thus, based on the foregoing, the court concludes that substantial evidence does not

support the ALJ's implicit finding that Nelson is not illiterate.

## III.   CONCLUSION

After careful consideration of the record in this case, the magistrate judge's report and recommendation, Nelson's objections, and the SSA's response, the court **ADOPTS** sections II-V of the magistrate judge's report, doc. 22 at 13-32, which Nelson did not object to, *see* doc. 23.   For the reasons discussed above, the court **REJECTS** section I of the magistrate judge's report concluding that the ALJ properly accepted VE testimony to find that Nelson could perform other work and is not disabled, doc. 22 at 8-13.   Accordingly, the Commissioner's final decision is **REVERSED** and **REMANDED** for the ALJ to reassess whether Nelson is illiterate and which Medical-Vocational Guideline applies in this case, and to seek further evidence, if necessary, to make those determinations.   The court will enter a separate order in conformity with this Memorandum Opinion.

**DONE** the 30th day of September, 2019.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE